1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

CHIEF MAGISTRATE JUDGE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. MJ20-425 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| v. | ) | RELEASE |
| | ) | |
| ISAIAH THOMAS WILLOUGHBY, | ) | |
| Defendant. | ) | |

Isaiah Willoughby submits this memorandum to provide the Court with additional information before the July 20, 2020 detention hearing.

## I.      Proposed Release Plan

Mr. Willoughby proposes that he be released to live with his brother at the verified address in the Pretrial Services Report. His brother lives with his wife. His brother has informed defense counsel he will do all that he can to make sure Mr. Willoughby succeeds if released and he will cooperate with the Probation Department in supervising Mr. Willoughby.

Mr. Willoughby would abide by any conditions that the Court imposes, including GPS monitoring (home confinement) and any chemical dependency or mental health treatment requirements that the Court deems appropriate. He understands that any bond violations could cause him being returned to custody.

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

## II. Procedural History

This offense allegedly took place on June 12, 2020, during the CHOP (Capitol Hill Organized Protest) and Black Lives Matter protests in Seattle. Mr. Willoughby is accused of setting fire to a pile of debris outside of the then-abandoned SPD East Precinct, a building not made of wood or other easily flammable material. Mr. Willoughby was arrested in Tacoma at his residence on June 18, 2020. He was detained at the King County Jail.

On June 23, 2020, Mr. Willoughby was charged in King County Superior Court with Arson Second Degree (setting a fire which damages property). After about three weeks in custody, a community bail fund agreed to post bail for Mr. Willoughby on July 11, 2020.[1] He was released from custody, but was arrested following a misdemeanor assault allegation now charged in Seattle Municipal Court.[2] Mr. Willoughby was released again after posting bail for that case on Monday, July 13, 2020.

After Mr. Willoughby was released twice in state court, the Government file a federal complaint against Mr. Willoughby and obtained a warrant for his arrest on July 14, 2020. Mr. Willoughby was arrested that afternoon and had an initial appearance before this Court on July 15, 2020.

## III. Mr. Willoughby's Background and Connections to this District

Mr. Willoughby was born in Tacoma and is 35 years old. He and his four siblings spent much of their youth in foster care. They grew up without a permanent

---

[1] The pretrial services report states that Mr. Willoughby bailed out after learning that the U.S. Attorney's Office was going to file charges against him, implying he was attempting to flee federal prosecution. The Court should not engage in such speculation. As counsel understands it, the King County Prosecutor announced, in open court during a hearing, that "the feds" will likely take the state case. The county defender sought appointment of counsel for Mr. Willoughby for the federal case. There was nothing nefarious about this common procedure.
[2] Just as Mr. Willoughby is presumed innocent of the offense in this case, he is also presumed innocent in that case. He denies the conduct alleged in that case.

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

home, cycling between foster parents, their birth mother, and their grandmother. Mr. Willoughby's birth mother struggled with chemical dependency, exposing the children to an environment where drug use was open. In 1997, Mr. Willoughby and his siblings were adopted, although Mr. Willoughby remains close with his birth mother and his siblings.

Despite his difficult childhood, Mr. Willoughby has accomplished much in life. He has no juvenile criminal history. He graduated from Franklin High School in 2003. Since then, he has worked hard to continue his education, taking community college classes on automotive repair, business, real estate, and other subjects between 2003 and 2018. He completed the real estate course of study and is eligible to take the state licensing test.

Mr. Willoughby has been active in community engagement in the last several years. In 2019, he ran as a candidate for Seattle City Council, District 1. At candidates' forums, he spoke about homelessness, involving youth in local politics, and the importance of connecting people in the criminal justice system with services. His mission statement was "promoting healthy minds and spirits."

Also in 2019, Mr. Willoughby helped put on the first annual Seattle Sneaker Ball, an event hosted by Sneaker Warz, an apparel company and lifestyle brand. A portion of the proceeds from the event went to Redeeming Soles, a non-profit organization that provides footwear to men, women, and children in need. The defense team has spoken with the owner of Sneaker Warz who said that Mr. Willoughby could come back to work part-time. Like most businesses, the COVID-19 epidemic has caused economic stress for the company.

Mr. Willoughby also has a strong employment history outside of his work with the apparel brand and political activities. He worked at Les Schwab Tires before the

MEMORANDUM IN SUPPORT OF RELEASE
(*United States v. Willoughby*, MJ20-425) - 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    COVID-19 caused temporary layoffs. He is eligible to return to work when the

2    economy reopens.

3        **IV. Mr. Willoughby's Criminal History**

4        The Government and Pretrial Services point to Mr. Willoughby's criminal

5    history as a reason for detention. The Stanford Center on Poverty and Inequality found

6    that, by the end of 2015, the rate of incarceration for Black men ages 20-34 was 5.7

7    times the rate of incarceration for similarly aged white men.[3] Mr. Willoughby is not a

8    stranger to the carceral system's disproportionate impact on Black men. His record, as

9    set forth in the Pretrial Services Report, consists primarily of misdemeanor convictions,

10   and his two felony convictions are non-violent offenses. The felony convictions include

11   a 2007 Trafficking in Stolen Property conviction, for which he was sentenced to work-

12   release and community service, and a Theft First Degree conviction, which consisted of

13   a shoplifting offense at a grocery store during which he had an altercation with an

14   employee. For the latter offense, he was sentenced to 59 days of custody. The rest of

15   Mr. Willoughby's record includes misdemeanor convictions dating to 2005. More than

16   half of the charges in the pretrial services report were dismissed. While he has several

17   assault convictions, most are fairly dated, having occurred between 2005 and 2010. The

18   most recent assault conviction took place in 2016.

19       Pretrial Services notes that Mr. Willoughby has pending warrants in several

20   cases, but the jurisdictions that issued those warrants did not place detainers for him

21   when he was recently in the King County Jail. And those cases appear to involve

22   shoplifting-type allegations, because they are charged as theft in the third degree.

23

24

25

26   ---
     [3] Available at
     https://inequality.stanford.edu/sites/default/files/Pathways_SOTU_2017_incarceration.pdf

MEMORANDUM IN SUPPORT OF RELEASE
(*United States v. Willoughby*, MJ20-425) - 4

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## V.      The Bail Reform Act

The Bail Reform Act (BRA) provides for release of a person upon a "any condition or combination of conditions" if those conditions "will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The statute thus presumes release absent a judicial finding that no conditions exist that will reasonably assure the twin goals it describes. It does not require certain or near-certain assurance of appearance and community safety—just that the conditions will provide reasonable assurance. In this way, the statute balances the judicial process, community safety, and the presumption of innocence by avoiding unnecessary detention of people presumed innocent. The BRA provides for a rebuttable presumption of detention only where a person is accused of committing a small subset of statutes. 18 U.S.C. § 3142(e). This case does not fall into that subset and no presumption of detention applies here. *Id*.

The Government will likely emphasize the serious nature of the charge by reiterating the mandatory minimum penalty. Nothing about the charge dictates that Mr. Willoughby be detained, however—neither the penalties he faces, nor the facts as the Government alleges them. Congress did not include the offense in BRA's list of rebuttable presumption offenses. It could have but chose not to.

And as Exhibit A to the defense's memorandum for the detention review hearing demonstrates, courts have seen fit to release people facing the same charges stemming from incidents involving more aggravated attacks (such as cases involving use of Molotov cocktails.) While each detention assessment is individualized, these cases reflect the reality that arson cases arising out of the protests do not present unmitigable risk of flight or danger.

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

## VI.    Conclusion

Rather than using the resources of the federal government to fill voids in local investigations, such as investigating police misconduct in response to BLM protests, the federal government has chosen to simply step into a case already investigated and charged in state court. The federal government is simply using the cudgel of federal mandatory minimum sentences to detain and imprison certain protestors. Whereas Mr. Willoughby was facing a standard range sentence of 12-14 months in state court for Arson Second Degree, the Government will now argue that he should be detained because he faces a draconian federal mandatory minimum term. This Court should resist such arguments and faithfully apply the standards in the Bail Reform Act that presume release on bond, reserving detention for only rare cases.

Release is also warranted in light of the COVID-19 epidemic. As the Court knows, inmates cannot maintain social distancing at the FDC Seatac and jails are susceptible to viral outbreaks. In light of the safety precautions taken at the FDC Seatac, it is difficult for counsel to communicate with detained clients. If released, Mr. Willoughby can shelter at this brother's home while also communicate with counsel.

Release is warranted, despite the allegations. Therefore, Mr. Willoughby respectfully requests that the Court release him on an appearance bond with pretrial supervision and conditions.

DATED this 17ᵗʰ day of July 2020.

Respectfully submitted,

s/ *Dennis Carroll*
Assistant Federal Public Defender
Attorney for Isaiah Willoughby

MEMORANDUM IN SUPPORT OF RELEASE
(*United States v. Willoughby*, MJ20-425) - 6

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**