THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR20-111-JCC |
| Plaintiff, | ) | |
| v. | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| ISAIAH THOMAS WILLOUGHBY, | ) | |
| Defendant. | ) | |

## I.   INTRODUCTION

Isaiah Willoughby respectfully requests this Court impose a sentence of time-served (approximately 16 months of custody) with three years of supervised release, following his guilty plea to conspiracy to commit arson. This sentence is appropriate given the unique circumstances of Mr. Willoughby's background and the circumstances leading to the offense. Mr. Willoughby takes full responsibility for his actions and regrets the harm his actions had on the City, the bystanders, and the Black Lives Matter movement.

- Mr. Willoughby's personal background is compelling. As outlined in the attached Social History (Exhibit1, filed under seal), Mr. Willoughby's early childhood was chaotic. His parents were addicts and he spent much of early youth in many foster homes. Despite his difficult background, Mr. Willoughby has a strong history of employment and community engagement. He ran for Seattle City Council in 2019.

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

- Mr. Willoughby was housemates with Manuel Ellis, a man killed by Pierce County Sheriffs in early 2020. Mr. Willoughby became distraught over the killing his friend and this was compounded by the murder of George Floyd and others by police around the country.

- Mr. Willoughby did not intend to inflict physical harm on anyone. He believed that the East Precinct had been abandoned.

Mr. Willoughby regrets setting the fire and acknowledges his conduct was misguided, dangerous, and counterproductive. Exhibit 2 (Isaiah Willoughby's Letter to the Court). He apologizes to SPD, bystanders, and the Black Lives Movement protestors. *Id*. For much of the time his case was pending, he had little faith in the criminal legal system. However, after one of George Floyd's killers was convicted and the State of Washington charged officers in the death of Mr. Ellis, Mr. Willoughby felt it was time for him to take accountability for his own actions. *Id*.

Mr. Willoughby acknowledges that some punishment is warranted. Given the unique circumstances, the defense recommends a sentence of time-served (about 16 months of custody) with three years of supervised release. Such a sentence is actually greater than the mandatory guideline range Mr. Willoughby would have faced in state court where he was initially charged. With three years of supervised release, the Court will have sufficient time to monitor Mr. Willoughby's stated commitment to "move forward for [himself] and make things better for [the] community." Exhibit 2.

## II.     BACKGROUND

### A. Introduction

A complete description of Mr. Willoughby's personal history is in Exhibit 1, a social history compiled by Daniel Potter-Engelskirger, LICSW, the social worker at the Federal Public Defender. Mr. Willoughby, age 36, has overcome much in his life. His biological parents were both addicts and his father was abusive toward his mother. Isaiah was severely neglected and, despite the involvement of Child Protective Services early in his life, he lived in homes where drug use and trafficking were pervasive. For

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

the next several years, he and his brother bounced between his mother's home and dozens of foster care placements until Penny Willoughby, the last foster parent, adopted him into a loving home.

As an adult, Mr. Willoughby accumulated several misdemeanor convictions and one prior felony conviction. However, he has also established a solid employment history, continued his education at several local colleges, and in 2019, ran for Seattle City Council.

Mr. Willoughby has been detained for this case for more than a year, far longer than any prior term of custody. Over his recent term of custody, he has given much thought to his conduct, expressing remorse to his friends and family. He hopes to continue his education, get back to supporting himself, and contribute in positive ways to his community.

### B. Childhood

Mr. Willoughby's biological parents struggled with addiction to crack cocaine. His father was a drug dealer who physically abused his mother. During his early years, he and his siblings were severely neglected. His aunt, Kimberly Mays, recalls that, as a child, Isaiah was, at times, "locked in a room and thrown potatoes to eat." Exhibit 1, p. 3. His mother left the children alone for long periods and exposed them to drug users. *Id*.

For a period, his mother moved with the children to Sacramento, so her mother could help with childcare. This did not work out. His mother used her public assistance to purchase drugs, failed to enter drug treatment, and neglected her children. They continued to live in a home where drug use was pervasive until the family was evicted. Mr. Willoughby's mother went to a shelter and the children were placed in foster care. Eventually, his mother returned to Washington where Isaiah was eventually placed in foster care.

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Isaiah and his brother were moved between dozens of foster homes. This environment took a toll on Isaiah and he lagged developmentally behind other children his age. His mother briefly regained custody of Isaiah and his brother, only to lose custody again due to her drug use. His father, Isaac, sought legal means to obtain custody. However, his father failed to follow through with DSHS services and his parental rights were terminated. His mother's parental rights were eventually terminated after she failed to show up for treatment and missed visitation appointments with her children.

Eventually, DSHS placed Mr. Willoughby in the home of Penny Willoughby, who by that time already had custody of his younger siblings. This placement began as foster care; however, about four years later, Penny adopted Isaiah and his brother, William. This was a positive outcome for Isaiah. Penny was, and remains, a nurse who cares for medically fragile and disabled children. Isaiah and his brother experienced stability for the first time. He and his brother attended Zion Preparatory Academy for elementary school, and then attended public middle school and high schools. Isaiah graduated from Franklin High School in 2003 where he played sports and his friend reports he was "social and well-connected . . . attending other school's dances and many sporting events with friends." Ex. 1, p. 10. He even earned an award for his athletic and academic achievements.

### C. Employment and College Classes

Despite this trauma during his early development, Isaiah has proven resilient. He has also demonstrated that he is a hard worker and has been employed in some capacity since the age of 15 when he sold Seattle Times subscriptions door-to-door. At home, he helped Penny and Kathy with the children in their care. He worked at Safeway in high school and, after high school, had several sales jobs, including Radio Shack, Target, CompUSA, Wyndham Resorts, Clearwire, and a local vacuum cleaner company. His

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

engaging personality made sales and promotion a natural fit. Most recently, and until his arrest for this case, he worked at Les Schwab Tires, where his supervisor described him as a committed employee who is memorable because of his big smile and engaging personality.

Besides his usual "day jobs," Mr. Willoughby has also shown entrepreneurial initiative. He does promotions and similar work with a local company, Sneaker Warz, which primarily sells apparel online. They have also put together events to raise money for charities.[1]

Mr. Willoughby has continued to pursue educational opportunities since graduating from high school. He attended college at multiple local institutions, including South Seattle College to study auto body collision repair; Bellevue College and Portland College to study business; and North Seattle College to study real estate.

Inspired by a college instructor, Mr. Willoughby ran for Seattle City Council in the 2019 primary as a Republican. His campaign slogan was "Promoting Healthy Minds and Spirits."

**D.     2020: COVID and the murders of Manuel Ellis and George Floyd**

The start of the COVID epidemic and the murder of Mr. Ellis occurred at about the same time, March 2020. Before these events, Mr. Willoughby was doing well. He was liked by his employer. His aunt Kimberly Mays, a social worker who owns the transitional house where Mr. Willoughby and Mr. Ellis lived, reports that, before Mr. Ellis was killed, Mr. Willoughby was a "kind-hearted person, who loves to work and stay busy, and who will have you cracking up with his humor. He is very generous, giving even complete strangers clothing from a clothing line he works with." Exhibit 5 (Ms. Mays' Letter). Mr. Willoughby had been living in the room adjacent to Mr. Ellis

---

[1] *See e.g. 2019 Sneaker Ball* where proceeds were donated to charitable causes. Available at https://sneakerwarz.net/blogs/news

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

and the two had grown close during the previous weeks. Ms. Mays states, "Manny was considered family: a son to me and my husband and a like a brother to the rest of the household" and his death "affected our entire family, our church family, and the other tenants," "[b]ut Isaiah was affected the worst by Manny's murder." *Id*.

After Mr. Ellis was killed, Mr. Willoughby struggled to cope. *See* Exhibit 1, p. 16 (Social Work Report); Exhibit 5 (Support Letters, Kimberly Mays' and William Willoughby's Letters). Grieving over the death of his housemate and with little structure in his life, Mr. Willoughby started on a downward spiral. His aunt reports he started drinking, lacked focus, and became forgetful. Not surprisingly, he became fixated on the police brutality directed at Black people.

In late May 2020, George Floyd was murdered, sparking the largest series of protests in U.S. history.[2] Mr. Willoughby eventually joined the protests in Seattle speaking out for police accountability. In early June 2020, the Seattle Police Department abandoned the East Precinct, which had become the focal point of the Black Lives Matter protests.[3] Mr. Willoughby came to Seattle on June 11, 2020, to join the protests. Eventually, at about 3:00 a.m. on June 12, using some gasoline, he set fire to a pile of debris outside a boarded up entrance to the East Precinct. The fire was near a tent, but was quickly extinguished by bystanders, resulting in, at most, some burn marks on the concrete sidewalk and some char marks on the frame of the precinct

---

[2] Buchanana et al., *Black Lives Matter May Be the Largest Movement in U.S. History*, N.Y. Times (July 3, 2020), available at https://www.nytimes.com/interactive/2020/07/03/us/george-floyd-protests-crowd-size.html

[3] The Government may suggest that the East Precinct always had some officers inside. However, as far as the public knew, the Precinct had been abandoned by SPD. *See Police Chief: Abandoning Seattle's East Prcinct Amid Protests "Was Not My Decision,"* Associated Press, June 11, 2020, available at https://www.q13fox.com/news/police-chief-abandoning-seattles-east-precinct-amid-protests-was-not-my-decision

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

entrance. Photos of the boarded up entrance and reported damage are included at Exhibit 3 along with more recent photos showing the same location.[4]

On June 23, 2020, Mr. Willoughby was charged in King County Superior Court with Arson Second Degree (setting a fire which damages property), after which he posted bail and was released on July 11, 2020. On July 14, 2020, the federal government file a federal complaint charging him with Arson, in violation of 18 U.S.C. §§ 844(f)(1) and 844(i). Dkt 1. Mr. Willoughby was arrested that afternoon and has remained in custody for this offense since. Dkt 7.

After his arrest and confinement at the FDC Seatac, Mr. Willoughby had little faith in the criminal legal system. To undersigned counsel, he has always been straightforward and honest, admitting guilt from the outset. But he wanted a trial because he saw no reason to cooperate with the criminal legal system.

Eventually, his demeanor changed. Mr. Willoughby had time to reflect on his actions and the direction of his life. In addition, George Floyd's killer was brought to justice, and Mr. Ellis' killers were charged. Mr. Willoughby has also seen that Mr. David-Pitts, charged with a similar offense in this District, was treated with dignity and fairness.

Mr. Willoughby decided that the right thing to do was to plead guilty and tell his story as set forth in his letter to the Court. Exhibit 2. Mr. Willoughby is a proud person. He does not want to blame his actions on his difficult early-childhood experiences. *Id.* He has worked hard all of his life to overcome that experience and does not want it to define him. *Id.* Nonetheless, the Court should consider his complex history. Frankly, he has overcome tremendous obstacles and, in many ways, is a success, despite the offense and his criminal history.

---

[4] The Government has not yet submitted a restitution amount. However, based on the photos in Exhibit 3, it appears that any damage caused by the fire was minimal and superficial.

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Mr. Willoughby understands that his conduct was dangerous to others and he is sorry for putting people's lives at risk. Exhibit 2. He also recognizes that his actions detracted from the movement that is important to him. *Id*. When he can put this episode behind him, he hopes to continue to improve his own life, and volunteer for community organizations that work to support the Black community. *Id*.

### III. ADVISORY SENTENCING GUIDELINES

The parties and Probation Department agree that the advisory guideline range is 46-57 months, based on a total offense level of 21 and CHC III. The parties and Probation Department all agree that that the advisory guideline range does not provide a useful framework in this particular case. The Probation Department recommends a sentence of 24 months and the Government recommends 36 months. The advisory guideline range fails to reflect Mr. Willoughby's tragic childhood, the death of his housemate, Mr. Ellis, and his commitment to improve himself and his community. The guidelines also do not anticipate the intensely stressful and punitive circumstances of being incarcerated during a global pandemic or contracting COVID-19 while incarcerated, with limited medical attention. As such, the guidelines provide a poor estimate of the appropriate punishment and a guidelines-based sentence would be an injustice. *Cf. United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006) (lamenting "the utter travesty of justice that sometimes results from the guidelines' fetish with absolute arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense.").

//
//

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

### IV. A TIME-SERVED SENTENCE IS SUFFICIENT TO ACHIEVE ALL OF THE GOALS OF SENTENCING.

**A. The Nature, Circumstances, and Seriousness of the Offense**

Mr. Willoughby acknowledges this offense is serious and he was lucky nobody was hurt and the property damage was very limited. He is grateful for the quick intervention of the bystanders.

A fire targeting the Seattle Police Department East Precinct presents distinctly local concerns. The building is owned and operated by the City of Seattle. The bulk of the investigation was conducted by Seattle Police Detective Kawahara, who identified Mr. Willoughby as the person who set the fire. This case required no specialized testing of materials by the ATF and the key pieces of evidence were all uncovered by SPD. Mr. Willoughby was originally charged in King County Superior Court with Second Degree Arson on June 23, 2020. PSR § 13. He posted bond but was later charged in this Court on July 14, 2020. Dkt 1.

In state court, Mr. Willoughby faced a mandatory guideline range of 6-12 months.[5] Charging Mr. Willoughby in federal court dramatically changed his initial sentencing exposure to at least a five-year mandatory minimum prison term. *See* 18 U.S.C. § 844(f)(1) and 844(i); Dkt 24. The Government and defense agree that the advisory guideline range, with acceptance of responsibility, is 46-57 months. Eventually, the Government offered Mr. Willoughby the plea to Conspiracy to Commit Arson, which has no mandatory minimum, but the same advisory range.

The Department of Justice can exercise its discretion to charge this and other protest related cases in federal court. Its decision to charge protests cases such as this has, however, been met with some criticism. Federal prosecutors have been accused of deliberately targeting Black Lives Matter protestors with heavy-handed criminal

---

[5] Mr. Willoughby has one prior felony conviction, giving him an Offender Score of 1, and a range of 6-12 months. *See* Exhbit 4 (Washington State Sentencing Guideline Scoring Sheet, Arson Second Degree).

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

penalties. *See* Associated Press, *Feds Deliberately Targeted BLM Protesters to Disrupt the Movement, A Report Says*, National Public Radio, 8/20/21.[6] ("A key finding of the report was that the push to use federal charges against protesters came from top-down directives from former President Donald Trump and former Attorney General William Barr.") The federal government's attempt to marginalize the Black civil rights movement and prosecute its members is nothing new. The federal government's COINTELPRO program, from 1956-71, targeted Black civil rights organizations, and, more recently, the FBI Counterterrorism Division designated Black Lives Matter as a "Black Identity Extremists" which allegedly posed a threat of violence. *See* German, *The FBI Targets a New Generation of Black Activists*, The Brennen Center, 6/26/20.[7]

Mr. Willoughby's concerns about police violence are not just abstractions. Police killed his housemate, Mr. Ellis. In addition, the City of Seattle has its own problems with biased policing, a fact well known in the Black community long before the City entered into the 2012 Consent Decree with the Department of Justice. *See* DOJ, Civil Rights Division, Investigation of the Seattle Police Department, 12/16/11, p. 2.[8] Although the consent decree was entered nearly ten years ago, recent data still indicates a problem with biased policing by SPD. *See* Carter, *Report: Seattle police stop Black people, Native Americans at far higher rate than white people*, The Seattle Times, 7/26/21.[9]

Property destruction is a common response to police brutality in America. In 1968, the Kerner Commission Report found that many riots in inner cities were sparked by police brutality directed at Black residents. Haberman, *The 1968 Kerner*

---

[6] Available at https://www.npr.org/2021/08/20/1029625793/black-lives-matter-protesters-targeted
[7] Available at https://www.brennancenter.org/our-work/analysis-opinion/fbi-targets-new-generation-black-activists
[8] Available at https://www.justice.gov/sites/default/files/crt/legacy/2011/12/16/spd_findletter_12-16-11.pdf
[9] Available at https://www.seattletimes.com/seattle-news/crime/report-black-people-and-native-americans-get-stopped-by-seattle-police-at-a-far-higher-rate-than-white-people/

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

*Commission Report Still Echoes Across America*, New York Times, 6/23/20.[10] The Kerner Commission's sweeping recommendations to address white racism were largely ignored. *Id*.

It bears repeating that Mr. Willoughby does not cite the history of police brutality to *excuse* his conduct. He simply asks that it be placed into context. He regrets his actions, has pled guilty to a felony, and has served a substantial time in custody.

Considering the unique local interests of this case – a city owned building and an investigation spearheaded by Seattle Police – it makes sense to consider the penalties Mr. Willoughby would have faced in state court as a reflection of the seriousness of the offense. As noted above, he faced a mandatory range of 6-12 months for the same conduct.

In another somewhat similar case, *U.S. v. David-Pitts*, this Court sentenced Mr. David-Pitts to 20 months of custody. CR 20-143JCC, Dkt 40. Mr. David-Pitts' actions were far more aggravated than Mr. Willoughby's actions. Mr. David-Pitts, along with others, set fire to the East Precinct while attempting to seal officers inside the garage while others barricaded the only exit. CR20-143JCC, Dkt 37 (Gov't Sentencing Memo, p. 2-5). There, the Government believed that Mr. David-Pitts and others intended to kill, or at least harm, the officers inside. *Id*. Mr. Willoughby, on the other hand, believed the East Precinct was abandoned as widely reported.[11]

A time-served sentence would not leave Mr. Willoughby unpunished for this offense. Rather, he has spent nearly 16 months in custody under particularly difficult circumstances. As outlined the Probation Department's thoughtful recommendation, much of his time in custody has been spent in lockdown, quarantine, and isolation due to the pandemic. Probation Recommendation, p. 5; PSR § 69. He will forever be

---

[10] Available at https://www.nytimes.com/2020/06/23/us/kerner-commission-report.html
[11] The two cases are similar in other respects. Both David-Pitts and Willoughby knew people killed by police violence and both had difficult backgrounds.

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 11

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

marked a federal felon, subject to seemingly endless collateral consequences.[12] His case has attracted unwelcome notoriety. He will be under federal supervision for a period of years with the attendant losses of freedom and privacy.

### B. Mr. Willoughby's history and characteristics

The Probation Department Recommendation aptly states, "Mr. Willoughby's personal history is complex, riddled with both significant trauma and strong support, poor decision-making and compelling ambition." Probation Recommendation, p. 3. His background is well documented in the Presentence Report and the Social History submitted by Daniel Potter-Engelskirger, LICSW. Until Mr. Willoughby read the Social History report, he was unaware of some details of his early years. For a long time Mr. Willoughby felt he had escaped his troubled past and avoided potential long-term effects. However, when reviewing the Social History report, he was stunned and troubled. He could remember bouncing between foster homes, but not many details of his behavioral health, the emotional and physical neglect he survived, or the environmental stressors to which he was subjected. The report provided Isaiah with a new perspective on his adult life and has further motivated him to rise above the rough start he had in life.

Despite his traumatic early childhood, Mr. Willoughby is a man with talents and a desire to help others. His aunt writes:

> Isaiah has a very giving heart and is quick to help someone in need financially, helping them move, or whatever he could do to help. That

---

[12] As a former federal prisoner and current law professor explains it, "Even if a defendant is sentenced to no prison time, there are still thousands of collateral consequences flowing from a federal felony conviction. People with felony convictions may be legally discriminated against in employment, housing, federal benefits, and voting rights. They can be shut out of professions, including the legal profession. They can be saddled with legal financial obligations, such as fines or restitution, hovering over their head for decades." Shon Hopwood, *Improving Federal Sentencing*, 87 UMKC L. Rev. 79 (2018) (footnote omitted).

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 12

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

was his best characteristic, overall-helping people and making them laugh while he did it.

Exhibit 5 (Ms. Mays' Letter). A long-time friend, Ms. Drake, describes him as "the kind of friend who is always there for you when you need help" and she describes how he helped with her car and, during financially difficult times, he unexpectedly brought Christmas presents to her young children. Exhibit 5 (Ms. Drake's Letter). His brother, William, is confident Isaiah will "recover and heal" and expresses his full support of Isaiah moving forward. Exhibit 5 (William Willougby's Letter).

Mr. Willoughby has demonstrated since the age of 15 a creative and persistent work ethic. He also has high expectations for himself and he looks forward to getting services with the Urban League, pursuing further education, and helping to support his community.

C.   **General Deterrence**

The Government may argue that a lengthy sentence is necessary to deter others from engaging in similar conduct. The Government's argument ignores that *any* sentence sends a message that criminal behavior will be met with severe sanctions. Mr. Willoughby's arrest and prosecution already sends the message that those who engage in this conduct will be identified and prosecuted.

Research clearly refutes the notion that more severe sentences serve as a general deterrent to crime. As one criminologist concluded there is "no real evidence of a deterrent effect for severity." Pasternoster, R., *How Much Do We Really Know About Criminal Deterrence*, 100 J. Crim. L. & Criminology 765, 817 (2010). The Department of Justice released a report summarizing research regarding general deterrence with five bullet-points,[13] two of which state:

---

[13] The other points address the certainty of being caught, the public perception that criminals will be caught and punished, and the ineffectiveness of the death penalty.

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 13

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

- Sending an offender to prison is not a very effective way to deter crime.
- Increasing the severity of punishment does little to deter crime.

National Institute of Justice, *Five Things About Deterrence*, U.S. Department of Justice, Office of Justice Programs (July 2014) (summarizing Daniel Nagin, *Deterrence in the 21st Century*, Crime and Justice in America: 1975-2025 (ed. Michael Tonry, University of Chicago Press, 2013)).

### D. Protecting the Community from Mr. Willoughby

The Court also need not impose additional time in custody to convince Mr. Willoughby of the wrongfulness of his actions or to protect the community from any further offenses.

Mr. Willoughby has several prior misdemeanor convictions, the last of which took place in 2016. PSR, Part B (Criminal History). His only felony conviction took place in 2007 (Trafficking in Stolen Property), for which he was sentenced to three months of work release. PSR § 34. He has never served a prison sentence, i.e. longer than 12 months, and his longest prior sentence was less than five months of custody, imposed in 2018. PSR § 41.

In this context, a sentence longer than 16 months (time-served) is unnecessary to deter Mr. Willoughby from future recidivism. Progressively tougher sanctions are not effective in reducing recidivism. *See* Mears, D., and Cochran, J., *Progressively Tougher Sanctioning and Recidivism, Assessing the Effects of Different Types of Sanctions*, Journal of Research in Crime and Delinquency, Volume 55, Issue 2, pp. 194–241 (March 2018). (Although increasingly tougher punishment among repeat offenders may sometimes reduce recidivism, less severe punishment appears on average to be more effective.) Social science research shows that longer prison sentences increase a defendant's risk of recidivism. *See* Gendreau, P., and Goggin, C., T*he Effects of Prison Sentences on Recidivism*, Solicitor General of Canada (1999)

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 14

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

(http://www.prisonpolicy.org/scans/e100012.htm) at 12–13 (Among a group of equally high risk offenders, those who received longer sentences had a higher recidivism rate).

Mr. Willoughby also enjoys broad support in the community. His family, both adopted and biological will assist him upon his release. Exhibit 5 (Support Letters). His aunt, Ms. Mays, describes how she turned her own life around and how her family is ready to "support, guide, and mentor" Isaiah through his reentry. Exhibit 5 (Ms. Mays' Letter). Mr. Willoughby recognizes that community support and transition services will be helpful.

V.   **CONCLUSION**

By statute, this Court is directed to impose the minimum term necessary to achieve the goals of sentencing, regardless of the advisory range. 18 U.S.C. §§ 3553(a), 3582; *United States v. Booker*, 543 U.S. 220, 233 (2005). A time-served (16-month) sentence and felony conviction treats the offense conduct seriously while also acknowledging Mr. Willoughby's unique circumstances, including his difficult childhood and the killing of his roommate, Mr. Ellis. Such a sentence offers Mr. Willoughby, and our community, an opportunity to heal and move on. Mr. Willoughby will then be supervised by this Court for three years, providing him the opportunity to demonstrate his positive life trajectory and time for the Court and Probation Department to monitor his progress.

DATED this 28th day of September, 2021.

Respectfully submitted,

s/ *Dennis Carroll*
Assistant Federal Public Defender
Attorney for Isaiah Willoughby

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Willoughby*, CR20-111-JCC) - 15

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100