THE HONORABLE JOHN C. COUGHENNOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR20-111-JCC |
| Plaintiff, | ) | |
| v. | ) | DEFENDANT'S DISPOSITION MEMORANDUM |
| ISAIAH THOMAS WILLOUGHBY, | ) | |
| Defendant. | ) | |

Isaiah Willoughby submits this memorandum in support of the disposition hearing set for December 1, 2022. At that hearing, Mr. Willoughby will admit all of the violations alleged by the Probation Department, which include:

1. Using alcohol on or about July 14, 2022.
2. Failing to submit to drug testing on the following dates:
   • June 30, 2022
   • July 6, 2022
   • July 25, 2022
   • August 12, 2022
   • August 16, 2022
3. Failing to obtain a substance use disorder assessment as instructed since April 26, 2022.
4. Failing to pay towards restitution as instructed since June 30, 2022.
5. Failing to report and reside at an approved residence since August 22, 2022.
6. Leaving the federal judicial district, the Western District of Washington, without prior permission from the probation officer, on or about October 4, 2022.

DEFENDANT'S DISPOSITION MEMORANDUM
*(U.S. v. Willoughby*, CR20-111-JCC) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Mr. Willoughby respectfully recommends a sentence of time-served (approximately 60 days) with 31 months of supervised release, including a special condition that he be placed at the RRC for a period up to six months. The Probation Department argues that a further term of confinement through the holidays is necessary so that Mr. Willoughby can come to grips with his potential substance abuse and mental health issues. However, an additional term of custody would not achieve that goal. Instead, a structured environment, such as the RRC, would provide supervision, support, and monitoring that would assist Mr. Willoughby in his transition from custody to the community.

The Probation Department recommends both an RRC placement and GPS monitoring while he is at the RRC. The defense suggests that this level of monitoring is unnecessary. If the Court is inclined to impose location monitoring, the defense recommends that it start *after* Mr. Willoughby is released from the RRC to provide monitoring when he transitions out of the RRC.

I.   BACKGROUND

Following Mr. Willoughby's guilty plea to Conspiracy to Commit Arson, this Court sentenced him to 24 months of imprisonment and three years of supervised release. Dkt. 84. Mr. Willoughby started this term of supervised release on March 29, 2022.

The Bureau of Prisons did not grant Mr. Willoughby any prerelease time in the RRC. He was released homeless from prison and showed up at the Probation Department with no housing. Luckily, his brother was able to provide him space in a storage room in his barbershop. The barbershop, located in a commercial strip mall, had a small kitchenette and a space for a mattress, but it was still less than an ideal housing placement.

DEFENDANT'S DISPOSITION MEMORANDUM
(U.S. v. Willoughby, CR20-111-JCC) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Mr. Willoughby is an ambitious man who values employment. Upon release from prison, he found employment at Synergy LLC in early June. He initially worked through a temporary placement agency, but he was hired directly by Synergy in early July due to his positive employment record. After a few weeks, Mr. Willoughby was laid off due to the company's financial issues. Mr. Willoughby later obtained employment through Total Success Staffing, working as a caterer at the Amazon headquarters in downtown Seattle.

As outlined in the Probation Department's violation memos and recommendation to the Court, Mr. Willoughby has chaffed against supervision. He missed UA testing because he was concerned about missing work. When he was released, he asked to do UA tests at the Seattle courthouse. However, the job he eventually found was in Kent, so he was concerned about missing work hours for UA testing. He worked from 7:30 am to 4:30 pm, which overlaps with the testing times for UAs at the Probation Department. After missing a UA, he spoke with his probation officer, who informed him that he could test in Tukwilla. While the bus made it possible to both test and get to work, it was a very tight schedule. Although Mr. Willoughby missed the tests outlined in the violation report, he also appeared for five UAs while on supervised release, four of which were negative for drugs/alcohol and one which was positive for alcohol.

The Probation Department memo outlines some of the issues that Mr. Willoughby had getting mental health and chemical dependency assessments. He obtained a mental health assessment but did not complete a chemical dependency assessment. To his credit, Mr. Willoughby made efforts to get the assessment. He initially scheduled a SUD assessment at STOP in Tacoma. While STOP was not one of the providers recommended by the Probation Department (because they don't take Apple Care insurance), Mr. Willoughby chose this agency at the suggestion of his aunt,

DEFENDANT'S DISPOSITION MEMORANDUM
*(U.S. v. Willoughby*, CR20-111-JCC) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

who runs a clean and sober transition home in Tacoma. His appointment was scheduled for July 2, 2022, in Tacoma. However, he eventually changed the appointment to July 26, 2022 at the STOP location in Kent. Mr. Willoughby then scheduled an SUD assessment at Sound for August 16, 2022. Mr. Willoughby made arrangements to take the day off from work so he could do the telehealth assessment. However, the day before the appointment, the provider notified him that he needed to reschedule because the COVID rules that allowed for telehealth appointments for SUD assessments had expired. The provider offered a new date for an in-person appointment. Mr. Willoughby was frustrated and responded by text, "Who gave you permission to choose this day and time for the assessment." The provider offered alternative dates but Mr. Willoughby did not respond and missed the appointment. However, Mr. Willoughby went back to STOP to schedule a SUD. The appointment was set for August 28, 2022. Exhibit 1 (STOP Letter). Admittedly, Mr. Willoughby did not make it to this appointment either. By this time, he had stopped communicating with his probation officer.

Mr. Willoughby admits he failed to make sufficient payments toward restitution. Mr. Willoughby has only been out of custody for a matter of months. His jobs, obtained through temp agencies, do not involve skilled labor and likely pay only slightly more than minimum wage. While he could have paid more, he was still struggling financially.

Finally, Mr. Willoughby was arrested in Las Vegas. He did not have permission to travel and, by that time, he was on warrant status. To be clear, though, he had not moved to Las Vegas; he was there for a short trip.

//

//

DEFENDANT'S DISPOSITION MEMORANDUM
(U.S. v. Willoughby, CR20-111-JCC) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

## II. A TERM OF TIME-SERVED (ABOUT 60 DAYS) WITH A SPECIAL CONDITION THAT INCLUDES A LENGTHY RRC PLACEMENT SERVES THE REHABILITATIVE AND TRANSITIONAL GOALS OF SUPERVISED RELEASE.

"Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). For that reason, 18 U.S.C. § 3583(c) requires Courts to consider different factors at a revocation hearing than at the original sentencing proceeding. Specifically, when determining the appropriate sentence for violation of supervised release, Courts may not consider "the seriousness of the offense," "the need to promote respect for the law," punishment, the kinds of sentences available, or the need to pay restitution. *See United States v. Miqbel*, 444 F.3d 1173, 1181 (9th Cir. 2006). It also is reversible error to "impose or lengthen a prison term in order to promote an offender's rehabilitation." *United States v. Grant*, 664 F.3d 276 (9th Cir. 2011). Rather, the Court should choose a sentence that furthers the overriding purpose of supervised release, "to assist individuals in their transition to community life." *Johnson*, 529 U.S. at 59.

Here, the rehabilitative goals of supervised release are best met by a time-served sentence with an RRC placement. Mr. Willoughby has already spent nearly 60 days in custody. Assuming an RRC condition is imposed, he would remain in custody until a bed date can be arranged through the Probation Department. He has gotten the message that he needs to be more cooperative with the Probation Department and comply with conditions of release. This is not a case where Mr. Willoughby was committing new crimes while on supervised release. The term he has already served, combined with a lengthy RRC placement, will impress upon him the importance of compliance with conditions.

### A. The characteristics of the defendant (18 U.S.C. § 3553(a)(1)).

In its sentencing recommendation from last year, the Probation Department aptly stated, "Mr. Willoughby's personal history is complex, riddled with both significant

DEFENDANT'S DISPOSITION MEMORANDUM
*(U.S. v. Willoughby*, CR20-111-JCC) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

trauma and strong support, poor decision-making and compelling ambition." Probation Recommendation at 3. Mr. Willoughby's childhood background was particularly chaotic and difficult. He was born to addicted parents and his first interaction with Child Protective Services occurred when he was approximately two years old. His next several years were spent in various households; at times with his grandmother, at times with his mother, and at times in one of many different foster homes. During his early childhood, he was placed in 26 different foster homes. There were many custody battles over Mr. Willoughby and his brother, and it appears that he was often neglected, left alone, and uncared for. Guardian ad litem reports indicate that Mr. Willoughby struggled with poor attachment, instability, developmental delay, and behavioral challenges. Eventually, he was adopted into a loving home with his siblings.

Despite his difficult childhood, Mr. Willoughby is an optimistic and ambitious person. He does not want others, especially the criminal legal system, to label him as a troubled Black man from a dysfunctional family and a broken foster care system. He frankly does not believe he needs mental health treatment, and he resists the suggestion that he has an alcohol problem. To him, it is a personal criticism to suggest that he needs treatment. He sees himself as a personable, smart, and ambitious man. While it's possible that he lacks personal insight, it is only because he believes he is doing fine, and he wants to focus on his own personal goals—getting a well-paying job and working on social justice issues.

The Probation Department's Recommendation recounts, in detail, all of Mr. Willoughby's prior criminal history. While Mr. Willoughby is not proud of his criminal history, this Court should keep in mind that, apart from the underlying Arson conviction, his criminal history consists of only misdemeanor convictions, the last of which took place in 2018. Between 2018 and the commission of the Arson in the

DEFENDANT'S DISPOSITION MEMORANDUM
(U.S. v. Willoughby, CR20-111-JCC) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

summer of 2020, he established a solid employment history, continued his education at several local colleges, and in 2019 ran for Seattle City Council.

> **B.    To deter criminal conduct, protect the public from further crimes, and provide the defendant with needed treatment (18 U.S.C. § 3553(a)(2)(B)–(D)).**

The Probation Department argues that Mr. Willoughby "is in need of mental health and substance use disorder services." Recommendation at 4. It may be true that Mr. Willoughby would benefit from SUD treatment, although he likely disagrees with that assessment. Nonetheless, treatment is best provided in communities, not in prisons. *Johnson*, 529 U.S. at 60 ("Supervised release, unlike incarceration, provides individuals with post-confinement assistance.").

A term of custody is not going to convince Mr. Willoughby that he actually does have substance abuse or mental health issues. A term of custody or some other punitive sanction is unnecessary to deter Mr. Willoughby from future violations. Additional imprisonment does not produce additional deterrence:

> [R]esearch does not show that the aversive experience of receiving correctional sanctions greatly inhibits subsequent criminal behavior. Moreover, a significant portion of the evidence points in the opposite direction—such sanctions may increase the likelihood of recidivism. The theory of specific deterrence inherent in the politically popular and intuitively appealing view that harsher treatment of offenders dissuades them from further criminal behavior is thus not consistent with the preponderance of available evidence.

Mark W. Lipsey and Francis T. Cullen, *The Effectiveness of Correctional Rehabilitation: A Review of Systematic Reviews* 3 Ann. Rev. L. Soc. Sci. 297, 302 (2007). *See also* Roger Warren, N*ational Center for State Courts, Evidence Based Practice to Reduce Recidivism: Implications for State Judiciaries* (2007) ("The research evidence is unequivocal that incarceration does not reduce offender recidivism.... Incarceration actually results in slightly increased rates of offender recidivism.").

DEFENDANT'S DISPOSITION MEMORANDUM
*(U.S. v. Willoughby*, CR20-111-JCC) - 7

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

The defense appreciates that Mr. Willoughby's criminal history appears to involve alcohol-related offenses. However, any such needs will not be addressed in a prison. Instead, release to the RRC would provide a structured and monitored transition plan.

### C.  This Court should not defer to the statement by the Sentencing Commission (18 U.S.C. § 3553 (a)(5)).

The Probation Department's recommendation is anchored by advisory range set forth in the Sentencing Guideline policy statement. The Sentencing Commission's policy statements deserve no deference by this Court. The Sentencing Commission has never promulgated guidelines for supervised release violations. *See* USSG, Chapter 7, Part A. Instead, the Commission simply created policy statements that, even before *Booker v. Washington*, 543 U.S. 220 (2005), were not binding on Courts. These policy statements contain no system of adjustment or departures to account for differing violations. They do not account for an offender's acceptance of responsibility, or lack thereof. They are not based on an empirical study of sentences actually imposed by district court judges. The guideline chart for revocation sentences has never been amended since its first publication in 1990. The policy statement fails to consider the disruptive impact a custodial sentence will have on people's lives.

Ultimately, when sentencing a defendant for a supervised release violation, this Court must consider the 18 U.S.C. § 3553(a) factors and impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. *See United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009). The policy statement range is excessive in this case. An additional three months in custody will do nothing to address the needs of Mr. Willoughby or protect the community. Sitting in jail for an additional three months will not convince Mr. Willoughby he needs treatment.

DEFENDANT'S DISPOSITION MEMORANDUM
*(U.S. v. Willoughby*, CR20-111-JCC) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

### III. CONCLUSION

Mr. Willoughby respectfully asks the Court to impose a time-served sentence to be followed by a six-month RRC placement. The violations before the Court do not present such a threat to the community that additional incarceration is warranted. A sentence of time-served and release to the RRC best accomplishes the goal of "assist[ing Mr. Willoughby] in [his] transition to community life." *Johnson*, 529 U.S. at 60.

DATED this 23rd day of November 2022.

                                Respectfully submitted,

                                s/ *Dennis Carroll*
                                Assistant Federal Public Defender
                                Attorney for Isaiah Willoughby

DEFENDANT'S DISPOSITION MEMORANDUM
*(U.S. v. Willoughby*, CR20-111-JCC) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100